IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| YOLANDA R. EFFINGER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: 2:07-CV-657-ID-TFM |
| | * | |
| WINN-DIXIE MONTGOMERY, INC. | * | |
| | * | |
| Defendant. | * | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant and submits this Brief in support of its Motion for Summary Judgment

## ALLEGATIONS

Plaintiff filed this lawsuit as a result of an alleged fall which allegedly occurred on or about August 20th, 2006 at a Winn-Dixie store in Montgomery, Alabama. Plaintiff alleges she fell after paying for her groceries at register seven. The suit was filed in Montgomery County Circuit Court. Based on diversity of citizenship and amount in controversy, Defendant removed the case to this Honorable Court. Defendant filed its Answer denying the allegations and pleading a number of affirmative defenses, including contributory negligence. Defendant later timely filed an Amended Answer adding as an additional affirmative defense that the conditions were at all times open and obvious.

## UNDISPUTED FACTS

Plaintiff, Yoland Effinger ("Plaintiff"), was shopping at the Winn-Dixie on the Eastern Bypass with her sister, Sonja Davis ("Davis"), on August 20th, 2006. (Effinger Depo. 28:2-

1

3.) As they entered the store, one of them selected a buggy. (*Id.* 41:14-16.) As the buggy was pushed to the shopping part of the store Plaintiff did not notice any uncleanliness, water, or problems with the area in front of the cash registers. (*Id.* 41:17-23; 42:14-17.) Plaintiff and her sister pushed the buggy after it was selected in front of the registers towards the produce. (*Id.* 42:21-23; 43:1.) It was pushed between the bench and the cash registers. (*Id.* 50:10-15.) She did not observe any water or foreign substance on the floor that could have caused anyone to slip. (*Id.* 50:16-21.)

As Plaintiff shopped throughout the store she did not notice any unsafe areas or water nor anything that concerned her. (*Id.* 43:2-16.) She did not report any problems with the floor to anyone. (*Id.* 43:17-19.)

There was someone checking out ahead of them. (*Id.* 54:12-21.) While Plaintiff's groceries were being bagged, Plaintiff left the cash register area to walk and select another buggy. (*Id.* 48:6-14.)

Plaintiff took only a few steps after leaving the register, approximately three. (*Id.* 51:16-18.) Plaintiff did not observe anything on the floor that could have caused her to fall. (*Id.* 51:16-23.) There were no buggies or obstructions or anything in Plaintiff's way after she left the register and before she reached the spot where she allegedly fell. (*Id.* 52:2.)

Plaintiff claims she slipped in a liquid substance. (*Id.* 52:21-23.) She does not know what it was. (*Id.* 53:1-2.) Plaintiff did not see it before she fell. Plaintiff did not know how long it had been on the floor. (*Id.* 53:5-9.) Plaintiff has no evidence that any Winn-Dixie person knew it was on the floor. (*Id.* 53:10-19; 58:2-9.) It was wet but she doesn't otherwise recall how it felt. (*Id.* 57:3-5.) There was a puddle but Plaintiff does not otherwise recall how large the amount of liquid was on the floor. (*Id.* 57:6-9.) The store manager was

able to clean it up with a paper towel. (*Id.* 58:10-21.) Plaintiff's foot went through the substance. (*Id.* 59:18-20.)

When asked, Plaintiff claimed Winn-Dixie did wrong in not contacting her after the accident, and, that its "carelessness" not to upkeep its floors or store put a hindrance on her life. (*Id.* 106:14-23.)

Davis testified in deposition that Plaintiff is her sister and she was with Plaintiff at the time of this incident. (Davis Depo. 9:8-13.) They used the same buggy while shopping. (*Id.* 13:7-10.) Davis cannot remember who selected the buggy. (*Id.* 13:14.) They grabbed one and started off in the produce section and went through the store. (*Id.* 13:11-17.) The buggy was selected from the buggy corral so they actually would have pushed in front of some of the cash registers. (*Id.* 13:11-23.) As they shopped, they went up and down all of the aisles. (*Id.* 14:4-5.) Davis did not notice any problems with the store in terms of cleanliness. (*Id.* 14:4-13.)

There was at least one buggy ahead of them in the checkout counter. (Davis Depo. 14:19-23; 15:1-3.) Plaintiff checked out first. (*Id.* 16:7-10.) When the cashier finished with Plaintiff's order, she began scanning Davis' order. (*Id.* 17:19-21.) Plaintiff was standing at the end of the counter and then left. (*Id.* 17:22-23; 18:1-4.) Plaintiff said she was going to get another buggy because that one was being filled up and there wasn't enough room to put Davis' groceries in. (*Id.* 18:12-18.) Plaintiff did not say anything to the bag boy about the way he was bagging the groceries. (*Id.* 20:12-18.)

Plaintiff turned to walk away and walked about two or three steps. (*Id.* 20:4-6; 19-21). When Plaintiff said she was going to get another buggy, Davis turned back to the cashier.

(*Id.* 22:16-23.) Davis then heard a noise and when she turned Plaintiff was on the floor. (*Id.* 22:16-23.) Davis did not actually see Plaintiff fall. (*Id.* 23:1-2.)

Davis went to see about Plaintiff who said she slipped on something. (*Id.* 24:9-12.) Davis saw a wet substance on the floor. (*Id.* 25:2-8.) Davis does not know what it was. (*Id.* 25:13-15.) Davis did not see the substance on the floor before Plaintiff fell. (*Id.* 26:6-9.)

Davis did not hear anyone from Winn-Dixie say how the substance may have gotten on the floor. (*Id.* 26:10-13.) Davis did not hear anyone from Winn-Dixie say anything about how long the substance had been on the floor. (*Id.* 26:10-17.) It was a wet substance. (*Id.* 26:23; 27:1.) The bagger did not know there was a wet spot. (*Id.* 33:16-19.) The manager asked the bagger why there wasn't a wet floor sign up and the bagger said he did not know there was a wet spot on the floor. (*Id.* 28:12-18.) The manager got a paper towel and cleaned up the spill. (*Id.* 28:20-23; 29:1-4; 17-18.)

Adam Dollar testified by affidavit that he was the manager on duty at the Winn-Dixie. (Dollar's Aff. p. 1.) Dollar, at that time, had been employed with Winn-Dixie for approximately nine years. (*Id.*) He reported to work about noon on the day of the alleged accident. (*Id.*) Dollar testified that "Winn-Dixie has a floor cleaning service that cleans, buffs and mops every night except for Sunday night. Since this incident occurred on Sunday night the floor cleaning service had been [at the Winn-Dixie] the night before. Additionally, Winn-Dixie employees are trained to look for spills and foreign objects on the floor and to report and clean up if necessary." (*Id.*) As the manager, Dollar "frequently, at least once an hour, walks the entire store checking for unsafe conditions. Dollar's inspection includes the front area where this incident allegedly occurred." (*Id.*)

"As a person enters this store, the buggies are immediately to the right in a corral."

(*Id.*) Once a person selects a buggy to go to the produce, he or she has to push the buggy in the area between the cash registers and the side of the buggy corral. (*See id.*) This means Plaintiff would have walked over this area as she entered the store. (*See id.*)

During Dollar's inspections in the front, he did not discover any water or other foreign substance on the floor. (*See id.*) No one advised Dollar of any problem with the floor in this area. (*See id.*) Dollar also checked with the employees who worked at the time of the alleged accident and they were not aware of any problem or dangerous condition on the floor. (*See id.*).

## STANDARD OF REVIEW

The moving party bears the initial burden of informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact. *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)); Fed. R. Civ. P. Rule 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra*, 477 U.S. at 323. The moving party's burden may be met either by demonstrating that there is no evidence of a dispute of material fact or by demonstrating that the non-moving party has failed to make a showing "sufficient to estab-lish the existence of an element essential to that party's case, and on which [he] will bear the burden of proof at trial." *Celotex*, *supra*, 477 U.S. at 322; *See also Real Estate*

*Financing v. Reso-lution Trust Corp.*, 950 F.2d 1540, 1543 (11th Cir. 1992) ("One way to seek an award of summary judgment is for the moving party to demonstrate that an essential element of the non-movant's case is lacking.").

After the moving party has met its burden under Rule 56(e), the non-moving party must go beyond the pleadings and designate specific facts from affidavits, answers to interrogatories and/or depositions showing that there is a genuine issue for trial. *Celotex*, *supra*, 477 U.S. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d. 538 (1986).

The Eleventh Circuit Court of Appeals has held that where the movant meets the initial burden of showing either that there are no genuine issues of material fact or the absence of evidence to support the non-moving party's case, the burden then shifts to the nonmovant to show the existence of a genuine issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). The court in *Fitzpatrick* held for issues on which the non-movant would bear the burden of proof at trial as follows:

> For issues on which the non-movant would bear the burden of proof at trial, the means of rebuttal available to the non-movant vary depending on whether the movant put on evidence affirmatively negating the material fact or instead demonstrated an absence of evidence on the issue. Where the movant did the former, then the non-movant must respond with evi-dence suf-ficient to withstand a directed verdict motion at trial on the material fact sought to be negated. Where the movant did the latter, the non-movant must respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed ver-dict motion, which was "overlooked or ignored" by the mov-ing party, who has thus failed to meet the initial burden of showing an ab-sence of evidence. *Celotex*, 477 U.S. at 332, 106 S.Ct. at 2557 (Brennan, J., dissenting). Second, he or she may come forward with addi-tional evi-dence sufficient to with-stand a directed

verdict motion at trial based on the alleged evidentiary deficiency. (citation omitted).

*Fitzpatrick, supra*, 2 F.3d at 1116.

## **PLAINTIFF HAS FAILED TO PROVE THAT DEFENDANT WAS NEGLIGENT AND, AS SUCH, DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT**

In her deposition, when asked what Defendant did wrong, Plaintiff claimed no one contacted her after the accident to see if she was okay and its "carelessness" in not up keeping its floors or its store put a hindrance on her life.

Winn-Dixie is under a duty to exercise reasonable care to provide and maintain reasonably safe premises for the use of its customers. *See Wal-Mart Stores, Inc. v. Rolin*, 813 So. 2d 861, 863 (Ala. 2001) (quoting *Kmart Corp. v. Bassett*, 769 So. 2d 282, 284-85 (Ala. 2000)) ("The owner of a premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided."). However, it is not an insurer of the customer's safety, and is liable for injury only if it negligently fails to use reasonable care in maintaining its premises in a reasonably safe condition. *See Ex parte Potmesil*, 785 So. 2d 340, 343 (Ala. 2000) ("An owner of a premises is not an insurer of the safety of its invitees. . . ."). Plaintiff must prove her alleged injury was proximately caused by the negligence of Winn-Dixie or one of Winn-Dixie's servants or employees. Actual or constructive notice of the presence of the substance must be proven before Winn-Dixie can be held responsible for the injury. *See Massey v. Allied Products Co., Inc.*, 523 So. 2d 397, 398 (Ala. 1988) (holding that a plaintiff, in a slip and fall case, "must be able to present evidence that [her] fall was caused by a

7

defect or instrumentality located on the premises as a result of the defendant's negligence, and of which the defendant had or should have had notice at the time of the accident."). "Furthermore, the [Plaintiff] must prove (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [Winn-Dixie]; or (2) that [Winn-Dixie] had actual notice that the substance was on the floor; or (3) that [Winn-Dixie] was delinquent in not discovering and removing the substance. *Maddox v. K-Mart*, 565 So. 2d 14, 16 (Ala. 1990). Moreover, the fact, if it be a fact, that Plaintiff was allegedly injured on Winn-Dixie's premises, does not give rise to any presumption of liability or negligence on the part of Winn-Dixie. See *Thompson v. Lee*, 439 So. 2d 113 (Ala. 1983); *Hose v. Winn-Dixie Montgomery, Inc.*, 658 So. 2d 403 (Ala. 1995). The principal of *res ipsa loquiter* is not applicable to slip and fall cases. See *Parrott v. Home Quarters Warehouse, Inc.*, 699 So. 2d 228 (Ala. 1997). Evidence that affords nothing more than mere speculation, conjecture, or guess is completely insufficient. See *Parrott, supra*; *Thompson v. Lee*, 439 So. 2d. 113 (Ala. 1983).

Plaintiff can produce no evidence of negligence by Winn-Dixie. First, under the burden of proof that Plaintiff must overcome, there is clearly no evidence of actual notice of an alleged slippery substance on the floor of the premises by Winn-Dixie. Plaintiff has testified that she did not observe any unsafe areas in the Winn-Dixie store before her alleged fall, nor did she notify an employee of Winn-Dixie as to the existence of any slippery substances on the floor of the premises. (*See* Effinger Depo. 43:2-19.) Moreover, the manager on duty at the time of Plaintiff's alleged fall testified that he was unaware of any slippery substances on the floor of the Winn-Dixie store, nor were such brought to his or his employee's attention. (*See* Dollar's Aff. p. 2.)

8

Second, there is no evidence that the substance allegedly slipped upon had been on the floor a sufficient length of time to impute constructive notice to Winn-Dixie. The facts of this case are so dissimilar from instances where Alabama courts have allowed the jury to infer the length of time a defect or instrumentality was on the premises. For instance, this case is unlike a case "where the substance is dirty, crumbled, mashed, or has some other characteristic which makes it reasonable to infer that the substance has been on the floor long enough to raise a duty on the defendant to discover and remove it." *Cash v. Winn-Dixie Montgomery, Inc.*, 418 So. 2d 874, 876 (Ala. 1982); *See also Ex parte Wal-Mart Stores, Inc.*, 806 So. 2d 1247 (Ala. 2001). The lack of any evidence proffered by Plaintiff of constructive notice which could be imputed to Winn-Dixie is similar to the evidence presented in *Vargo v. Warehouse Groceries Management, Inc.*, 529 So. 2d 986 (Ala. 1988), where the Alabama Supreme Court affirmed the trial court's summary judgment in favor of a grocery store in an action for a slip and fall. Vargo was allegedly injured after removing a bag of ice from an ice machine and slipping on water that had collected on the floor in front of the machine. The Plaintiff and her witnesses "testified that they had no idea how long the water had been there, except to say that it 'looked like it had been there for a while.'" *Id.* at 987. The Court found that "any inference that [the grocery store] was negligent would be the result of mere speculation." *Id.* Similarly, Plaintiff and her sister both testified they did not see the substance before Plaintiff's fall, and both described the substance only as "wet" and neither knew what it was. Additionally, Plaintiff admitted she *did not know* how long the substance had been on the floor. There is nothing in the description of the substance to indicate that it had been on the floor a sufficient length of time to impute constructive notice to Winn-Dixie and, most importantly, Plaintiff has no knowledge of how

long the substance was allegedly on the floor or how it got there. For all Winn-Dixie knows, the person checking out immediately before Plaintiff could have caused the spill. As such, Plaintiff fails to present evidence that the substance was on the floor a sufficient length of time to impute constructive notice to Winn-Dixie.

Third, there is no evidence that Winn-Dixie was delinquent in not discovering and removing the substance. Plaintiff and her sister both testified that when they pushed their buggy through the alleged area in which Plaintiff fell earlier they did not observe any problems with the floor. Moreover, Winn-Dixie had the floor cleaned, buffed and mopped the night before the alleged fall. Winn-Dixie's employees are trained to look for spills and foreign objects and to report and clean up if necessary. Adam Dollar, the manager on duty, frequently and at least once an hour walks the entire floor, including the area where Plaintiff allegedly fell, looking for unsafe conditions. Dollar did not see any substances on the floor of the area during his inspections nor were any brought to his attention. It should be noted that in *Cash v. Winn-Dixie* which is a case decided under the scintilla rule, the evidence showed that the store's last inspection prior to the alleged fall had been two and a half hours, yet the Alabama Supreme Court affirmed a directed verdict for Winn-Dixie. 418 So. 2d at 874.

In her Complaint, Plaintiff also alleges that Winn-Dixie failed to warn her of the hazardous condition. A business owes a "duty to warn an invitee of danger, of which [it] knows, or ought to know, and of which the invitee is ignorant. . . ." *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1980). In this instance, there is no evidence that Winn-Dixie knew or should have known of an unsafe condition on the floor. Plaintiff and her sister both testified

that they did not observe any substances on the area before the alleged fall, nor did they notify Winn-Dixie of any substances on the floor in the area. Further, Dollar testified that he was not aware of any substances on the floor during his inspection of the premises, was not notified of any substances on the floor of the premises by any customers or his employees, nor were his employees notified or were made aware of any substances on the floor of the premises. Moreover, Winn-Dixie can not be liable for injuries to Plaintiff which resulted from a danger which was known to Plaintiff or "should have been observed" by her in the exercise of reasonable care. *See Quillen*, *supra*. Any liability by Winn-Dixie would necessarily be predicated on its supposed superior knowledge of the danger. *See Gray v. Mobile Greyhound Park, Ltd.*, 370 So. 2d 1384 (Ala. 1979); *Tice v. Tice*, 361 So. 2d 1051 (Ala. 1978). However, when superior knowledge is lacking, then Winn-Dixie cannot be liable. In this instance, the substance on the floor would have been as visible to Plaintiff as to any employee of Winn-Dixie. Plaintiff testified there was no obstructions to her vision after she left the cash register.

Plaintiff also complains about the absence of a skid resistant surface in her Complaint. However, Winn-Dixie's only duty to Plaintiff is to "use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided." *Bassett*, 769 So. 2d at 284-85. Plaintiff asks this Court to extend a business owner's duty to an invitee to encompass implementing each and every conceivable safety measure on and to the premises. To Plaintiff's detriment, no Alabama case has held that a business owner must implement a variety of safety measures to fulfill its duty to an invitee. On the contrary, at least one Alabama case has held the opposite. See, *Wal-Mart Stores,*

*Inc. v. White*, 476 So. 2d 614 (Ala. 1985).

## **CONCLUSION**

It is clear that Plaintiff did not meet her burden and Winn-Dixie is entitled to entry of summary judgment.

          Respectfully submitted,

          /s/ *Randall Morgan*
          RANDALL MORGAN [MOR037]
          Attorney for Defendant
          Winn-Dixie Montgomery, Inc

OF COUNSEL:
HILL, HILL, CARTER, FRANCO,
  COLE & BLACK, P.C.
425 South Perry Street
P.O. Box 116
Montgomery, Alabama 36101-0116
(334) 834-7600
(334) 263-5969..FAX

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 2nd day of September, 2008, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following via email:

Ronald B. Hatcher, Esq.
P.O. Box 161442
Atlanta, GA 30321

                                        /s/ *Randall Morgan*
                                        OF COUNSEL